UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X

*In re Tenaris S.A.*                        **MEMORANDUM & ORDER**
*Securities Litigation*

                                            No. 18-CV-7059(KAM)(SJB)

------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

On December 12, 2018, Plaintiff Charles M. Atanasio
("Atanasio") commenced the instant securities class action in
the Eastern District of New York before Judge Raymond Dearie,
against Defendants Tenaris S.A. ("Tenaris"), Paolo Rocca
("Rocca"), and three other Defendants who have since been
dismissed.[1]  *See generally* (ECF No. 1, Complaint, "Compl.")
Approximately one month later, a separate securities class
action Complaint alleging virtually identical claims arising out
of the same events was filed in the Eastern District of New York
before Judge Joanna Seybert.  *See Gross v. Tenaris S.A., et al.*,
No. 19-cv-174.[2]

---

[1] In an October 9, 2020 Memorandum and Order, Judge Dearie granted the
original Defendants' omnibus motion to dismiss the Complaint for failure to
state a claim, only as against Defendants Edgardo Carlos, San Faustin S.A.,
and Techint Holdings S.r.l.  (ECF No. 70, "M&O.")

[2] The two cases, one before Judge Dearie (No. 18-cv-7059) and the other before
Judge Seybert (No. 19-cv-174), were consolidated on April 29, 2019 and both
cases have since proceeded under the lead case, *In re Tenaris Securities S.A.
Litigation*, No. 18-cv-7059.  (ECF No. 25.)  The consolidated cases were

In the original Complaint in the instant case, Atanasio alleged that Defendant Tenaris violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, and that Defendant Rocca violated Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), as a "control person." (Compl.) On December 5, 2018, after being appointed by Judge Dearie as Lead Plaintiffs, Jeffrey Sanders and Starr Sanders ("Lead Plaintiffs") filed an Amended Complaint. The Amended Complaint was filed on behalf of a purported class of investors who acquired American Depository Shares of Tenaris between May 1, 2014 and December 5, 2018, during which time Tenaris's stock price declined in value as a result of the 2018 disclosure of information implicating certain executives in a 2005-2006 scheme to bribe Argentinian government officials. (ECF No. 36, Amended Complaint, "AC" ¶¶ 11, 143-46.)

On November 11, 2022, after briefing omnibus motions to dismiss and a motion for reconsideration and after extensive fact discovery, the parties notified the Court that they had reached a settlement in principle. (ECF No. 106.) Lead Plaintiffs filed an unopposed motion for settlement approval, which was preliminarily approved by the Court on April 10, 2023.

_____

reassigned to the undersigned on November 8, 2023. (Nov. 8, 2022 Dkt. Entry.)

(ECF No. 112, "Order of Preliminary Approval".)  Pending before the Court is Lead Plaintiffs' motion for final approval of the Class Action Settlement and Plan of Allocation[3] (ECF Nos. 116 ("Sett. Mot."); 120 ("Reply")), and Lead Counsel's[4] motion for attorneys' fees.  (ECF No. 118, "Fees Mot.")  Defendants do not oppose either Lead Plaintiffs' motion for final approval of the Class Action Settlement and the Plan of Allocation or Lead Counsel's motion for attorneys' fees.  Nor has any member of the proposed settlement class filed any objection.

For the reasons set forth below, Lead Plaintiffs' motion for final approval of the Class Action Settlement and the Plan of Allocation is **GRANTED** in its entirety and Lead Counsel's motion for attorneys' fees is **GRANTED** in its entirety.

## BACKGROUND

### I.   Factual Background

The Court assumes the parties' familiarity with the facts thoroughly recounted in Judge Dearie's October 9, 2020 Memorandum and Order, which denied Defendants' motion to dismiss for lack of personal jurisdiction, denied the motion to dismiss for failure to state a claim as against Defendants Tenaris and

---

[3] Unless otherwise noted, capitalized terms have the meaning ascribed to them in Judge Dearie's October 9, 2020 Memorandum and Order or the Court's April 10, 2023 Order of Preliminary Approval, including definitions set forth in other documents referenced therein.  (ECF Nos. 70, 112.)

[4] Lead Plaintiffs are represented by attorneys Kara Wolke, Lesley Portnoy, Garth Spencer, Jason Krajcer, Joseph Cohen, and Melissa Wright, all from the law firm Glancy Prongay & Murray LLP ("Lead Counsel").

Rocca, and granted the motion to dismiss for failure to state a claim as against Edgardo Carlos, San Faustin S.A., and Techint Holdings S.r.l.  (M&O at 1-4.)

## II.  Procedural Background

Following the original Complaint, several individuals and entities filed motions seeking the Court's appointment of lead plaintiffs and lead counsel and to consolidate the related case before Judge Seybert.  *See* (ECF Nos. 6, 8, 11, 15.)  On April 29, 2019, Judge Dearie granted the motion of Jeffrey Sanders and Starr Sanders for appointment as Lead Plaintiffs and approved the appointment of Glancy Pongay & Muray LLP as Lead Counsel. (ECF No. 25.)  Judge Dearie also consolidated the instant action and the related action before Judge Seybert, *Gross v. Tenaris S.A.*, No. 19-cv-174.  (*Id.*)  Lead Plaintiffs filed an Amended Complaint on July 19, 2019 (ECF No. 36), and Defendants filed two omnibus motions to dismiss the Amended Complaint on February 14, 2020.  (ECF Nos. 53, 56.)

Following Judge Dearie's October 9, 2020 Memorandum and Order denying the motions to dismiss in part and granting in part as to Defendants Edgardo Carlos, San Faustin S.A., and Techint Holdings S.r.l. (M&O at 21, 25-27), the parties initiated fact discovery, which took place over the course of fifteen months.  (ECF No. 119, Declaration of Kara Wolke in Support of the Motion for Settlement Approval, "Wolke Decl." ¶¶

4

26-30.)  During the course of fact discovery, the parties discussed an initial confidential settlement demand, which Lead Plaintiffs served on Defendants in August 2022.  (Wolke Decl. ¶ 31.)  The initial negotiations did not result in a settlement and the parties proceeded to engage in further fact discovery. (Wolke Decl. ¶¶ 31-32.)  Starting on November 2, 2022, the parties engaged in renewed settlement discussions, which ultimately resulted in a settlement in principle.  (Wolke Decl. ¶¶ 32-33.)  Lead Plaintiffs filed a notice with the Court on November 11, 2022 advising the Court that the parties had reached a settlement in principle.  (ECF No. 106.)

Following the Court's adjournment of all deadlines *sine dine* in light of the parties' settlement in principle, Lead Plaintiffs filed an unopposed motion seeking the Court's preliminary approval of the Class Action Settlement, certification of the proposed class for the purpose of finalizing the settlement, and approval of Lead Plaintiffs' notice of the proposed settlement for dissemination to members of the settlement class.  (ECF No. 109.)  The Court preliminarily granted Lead Plaintiffs' motion on April 10, 2023. (ECF No. 112.)

On September 14, 2023, Lead Plaintiffs filed the instant motion seeking final approval of the proposed settlement and the Court held a settlement conference and fairness hearing on

October 19, 2023.  At the settlement conference and fairness hearing, the Court indicated that based on its review of Lead Plaintiffs' submissions, the proposed settlement is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). *See* (Oct. 20, 2023 Min. Entry.)  Nevertheless, the Court instructed Lead Plaintiffs to file a status update on its progress processing claims from members of the settlement class by or before March 29, 2024 to address the Court's outstanding questions regarding the proposed method of distribution of settlement funds.  (*Id.*)  Lead Plaintiffs filed a supplemental submission on March 29, 2024 confirming that claims processing was complete and outlining the results of the processed claims. (ECF No. 122.)

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 23(e), "[t]he claims . . . [of] a class proposed to be certified for purposes of settlement-may be settled . . . only with the court's approval."  Where, as here, the proposed settlement "would bind class members, the court may approve [the proposed settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) ("A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion.") (internal citation

6

and quotation marks omitted).  Fed. R. Civ. P. 23(e)(2) requires

the Court to consider whether:

> (A)  the class representatives and class counsel have
>       adequately represented the class;
> (B)  the proposal was negotiated at arm's length;
> (C)  the relief provided for the class is adequate,
>       taking into account:
>       (i)    the costs, risks, and delay of trial and
>              appeal;
>       (ii)   the effectiveness of any proposed method
>              of distributing relief to the class,
>              including the method of processing class-
>              member claims;
>       (iii)  the terms of any proposed award of
>              attorney's fees, including timing of
>              payment; and
>       (iv)   any agreement required to be identified
>              under Rule 23(e)(3); and [whether]
> (D)  the proposal treats class members equitably
>       relative to each other.

Fed. R. Civ. P. 23(e)(2).

A class action settlement approval procedure typically

occurs in two stages.  First, the Court grants preliminary

approval based on an initial evaluation of the proposed

settlement prior to the notice period wherein class members

are informed of the proposed settlement.  Second, the Court

grants final approval after class members are offered an

opportunity to be heard and after considering any

objections from members of the settlement class.  *See In re

Payment Card Interchange Fee and Merchant Discount

Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019).

**I.   Proposed Settlement**

In scrutinizing a proposed settlement to ensure fairness, adequacy, and reasonableness, the reviewing court must look first to the "negotiating process leading up to the settlement." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (internal citation omitted).  This examination is typically referred to as the Court's analysis of procedural fairness, and corresponds to the factors set forth in Fed. R. Civ. P. 23(e)(2)(A) (adequacy of representation) and (B) (arm's length settlement negotiations).  Next, the Court evaluates "the settlement's substantive terms" *D'Amato*, 236 F.3d at 85, which correspond to Fed. R. Civ. P. 23(e)(C) (adequacy of relief) and (D) (equitable treatment of class members), and additionally involve the Court's analysis of the factors set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).[5]

### A. Procedural Fairness

---

[5] As noted in *In re Payment Card*, "prior to the [December 1, 2018] amendments" to Fed. R. Civ. P. 23, the Federal Rules of Civil Procedure "did not specify standards for [the Court's]" approval analysis with respect to class action settlements.  330 F.R.D. at 28.  Accordingly, "[c]ourts in the Second Circuit [] traditionally considered . . . the *Grinnell* factors, to assist in weighing final approval and determining whether a settlement is substantively 'fair, reasonable, and adequate.'"  *Id.* at 29.  This Court agrees that "the new Rule 23(e) factors [] add to, rather than displace, the *Grinnell* factors" and, thus, examines both sets of considerations in tandem.  *Id.*; see also *Rosenfeld v. Lenich*, No. 18-cv-6720 (NGG), 2021 WL 508339, at *3, (E.D.N.Y. Feb. 11, 2021) ("The goal of [the December 1, 2018] amendment [to Fed. R. Civ. P. 23] is not to displace any factor, but rather to focus . . . on the core concerns of procedure and substance that should guide the [Court's] decision.") (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

The Court's inquiry regarding procedural fairness focuses on "whether 'the settlement resulted from arm's-length negotiations,' and whether class counsel 'possessed the experience and ability, and [] engaged in the discovery, necessary to effective representation of the class's interests.'" *In re Facebook, Inc.*, 822 F. App'x 40, 43 (2d Cir. 2020) (internal citation omitted).  In such circumstances, the proposed settlement benefits from a strong "presumption of fairness." *Wal–Mart,* 396 F.3d at 116.

The Court also assesses whether Lead Plaintiffs and Lead Counsel have adequately represented the class, including "whether: 1) [Lead Plaintiffs'] interests are antagonistic to the interest[s] of the other members of the class and [whether] 2) [Lead Counsel] are qualified, experienced and able to conduct the litigation" such that Lead Plaintiffs have manifested their interest in vigorously pursuing class claims. *Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

**B. Substantive Fairness**

As previously noted, in addition to the facts in Fed. R. Civ. P. 23(e)(2), the Court considers the factors set forth in *Grinnell*, 495 F.2d at 463, in reviewing the substantive terms of the proposed settlement.  The *Grinnell* factors include:

9

> (1) the complexity, expense and likely duration of the
> litigation; (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery
> completed; (4) the risks of establishing liability; (5) the
> risks of establishing damages; (6) the risks of maintaining
> the class action through the trial; (7) the ability of the
> defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best
> possible recovery; and (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the
> attendant risks of litigation.

*Grinnell,* 495 F.2d at 463.

The Court retains broad discretion to determine the fairness, adequacy, and reasonableness of a proposed class actions settlement. *See Joel A. v. Giuliani,* 218 F.3d 132, 139 (2d Cir. 2000) (noting that "considerable deference [is] accorded to the judgment of the district court" with respect to its "decision to approve a proposed settlement of a class action"). In exercising such discretion, the Court must be mindful of the "strong judicial policy in favor of settlements, particularly in the class action context." *In re PaineWebber Ltd. Partnerships Litig.,* 147 F.3d 132, 138 (2d Cir. 1998); *see also In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 20024) ("As a general policy matter, federal courts favor settlement, especially in complex and large-scale disputes").

The role of a reviewing court is not simply to "rubber stamp the settlement." *In re Visa Check/Mastermoney Antitrust*

10

*Litigation*, 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003).  However, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Guevoura Fund Ltd. v. Sillerman*, No. 15-CV-07192 (CM), 2019 WL 6889901, at *5 (S.D.N.Y. Dec. 18, 2019) (internal citation omitted).  Indeed, the Second Circuit has cautioned that a district court may not substitute its own judgment for the business judgment of the parties who negotiated the settlement and has warned that the Court's examination of the proposed settlement should not become so involved as to turn the settlement review into "a rehearsal of [a] trial." *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972) (internal citation omitted).

## II.  Attorneys' Fees and Costs

"Courts have long recognized that 'attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400 (CM), 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010) ("The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered.").

Courts have traditionally chosen between two methods to calculate reasonable attorneys' fees.  The percentage of recovery method involves the calculation of reasonable

attorneys' fees based on a percentage of the common recovery fund or settlement fund.  The lodestar method multiplies the number of hours expended by class counsel by the hourly billing rate for each member of class counsel's team.  Typically, a multiplier is applied to the lodestar figure to account for the risks associated with a contingency-based class action.  The Court retains discretion to use "either the lodestar [method] or [the] percentage of the recovery method[]" *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 45 (2d Cir. 2000), in order to "independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229-30 (S.D.N.Y. 2016).

"The trend in the Second Circuit is toward the percentage method . . . which spares the court and the parties the cumbersome, enervating, and often surrealistic process of lodestar computation." *In re Visa*, 297 F. Supp. 2d at 520-21 (internal quotation marks and citations omitted).  However, "[t]he Second Circuit encourages the practice of performing a lodestar 'cross-check' on the reasonableness of a fee award based on the percentage approach." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 06-cv-1684 (CM), 2007 WL 2230177, at 17 (S.D.N.Y. July 27, 2007).

Regardless of the calculation method – whether a percentage of the recovery or a lodestar multiplier, the Court must be

guided by the factors set forth in *Goldberger*, including "(1)
[counsel's] time and labor; (2) the magnitude and complexities
of the litigation; (3) the risk of [continued] litigation; (4)
the quality of representation; (5) the requested fee in relation
to the settlement; and (6) public policy considerations."
*Goldberger*, 209 F.3d at 50.

## DISCUSSION

### I.   The Proposed Settlement

As set forth previously, a class action settlement must be
"fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).
The Court first considers the procedural fairness of the
proposed settlement by assessing "the negotiating process
leading [up] to settlement" *Wal-Mart*, 396 F.3d at 116, and the
adequacy of representation pursuant to Fed. R. Civ. P.
23(e)(2)(A) and (B).  The Court next considers the substantive
fairness of the proposed settlement by reviewing the factors
outlined in *Grinnell*, 495 F.2d at 463, and the remaining factors
outlined in Fed. R. Civ. P. 23(e)(2)(C) and (D).  In assessing
both the procedural and substantive fairness of the proposed
settlement, the Court finds that the proposed settlement is
"fair, reasonable, and adequate" and thus warrants approval.

### A. Procedural Fairness

#### 1. *Arms-Length Negotiations*

Prior to discovery, the parties engaged in extensive

13

briefing, including with respect to Defendants' motions to dismiss and Defendants' motion for reconsideration. (ECF Nos. 51-63, 77-80.) The parties initiated discovery following Judge Dearie's Memorandum and Order denying in part and granting in part Defendants' omnibus motions to dismiss and Judge Dearie's denial of Defendants' motion for reconsideration. (M&O, ECF No. 81.) Following the initial exchange of discovery in August 2021, Lead Plaintiffs and their counsel served a confidential settlement demand on Defendants, which did not result in a settlement at that time. (Wolke Decl. ¶¶ 26, 31.) The parties engaged in further discovery until November 2022 when settlement discussions were resumed. (Wolke Decl. ¶ 32.) The record reflects that the parties engaged in approximately fifteen (15) months of discovery and two separate attempts to negotiate a settlement, which provided Lead Plaintiff and Lead Counsel with the information necessary to achieve a fair, reasonable, and adequate settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that . . . plaintiffs' counsel . . . have engaged in the discovery necessary to effective representation of the class's interests.") (citing *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)).

Accordingly, the Court is satisfied that the proposed

14

settlement is the product of "arm's-length negotiations," which was enhanced by "meaningful discovery" in accordance with Fed. R. Civ. P. 23(e)(2)(B).  *Wal-Mart*, 396 F.3d at 116.

### 2. Adequacy of Representation

The Court is also satisfied that Lead Counsel possesses the experience and ability to provide adequate representation and has provided such representation in service of the settlement class in the instant case.  Lead Counsel has substantial experience litigating class action lawsuits under federal securities laws, including a track record of achieving multi-million-dollar recoveries for class members in dozens of securities class actions claims.  *See* (ECF No. 119-3, Wolke Decl. Ex. 3, "Glancy Prongay & Marry Firm Resume"; Wolke Decl. ¶ 84.)  Importantly, as previously noted, no class member has objected to the proposed settlement or otherwise raised concerns about the adequacy of Lead Plaintiffs' or Lead Counsel's representation of the interests of the settlement class.

Moreover, Lead Plaintiffs' interests are coextensive with other class members' interests and are not antagonistic to the interests of the other members of the class.  *See In re Patriot National, Inc. Securities Litigation*, 828 F. App'x 760, 764 (2d Cir. 2020).  Like the other settlement class members, Lead Plaintiffs claims are based on the purchase of Tenaris shares during the settlement class period and the damages that resulted

from Defendants' allegedly wrongful conduct, which purportedly impacted the value of such shares.  (Sett. Mot. at 11.)  Lead Plaintiffs and Lead Counsel have served the shared interest of the settlement class members in achieving the greatest possible recovery by engaging in voluminous fact discovery and a thorough initial investigation of the relevant claims, including requesting and reviewing nearly 120,000 pages of document productions, exchanging initial disclosures and written interrogatories, hiring a bilingual private investigator to conduct numerous witness interviews, retaining local Argentinian counsel, serving third-party subpoenas, and submitting Freedom of Information Act ("FOIA") requests to the United States Securities and Exchange Commission and United Stated Department of Justice.  (Sett. Mot. at 12.)  Lead Plaintiffs and Lead Counsel also participated in extensive motion practice, including three motions to compel discovery, two omnibus motions to dismiss, and a motion for reconsideration.  (Sett. Mot. at 12.)  Finally, Lead Counsel took part in two separate settlement negotiation processes, armed with the information and analysis gleaned from discovery and motion practice.  (Sett. Mot. at 12.)

Based on the Lead Counsel's experience, and the vigorous advocacy efforts of Lead Plaintiffs and Lead Counsel, the Court finds that Lead Plaintiffs and Lead Counsel have adequately represented the settlement class pursuant to Fed. R. Civ. P.

23(e)(2)(A).

**B. Substantive Fairness**

In determining whether the proposed settlement was substantively fair, reasonable, and adequate, the Court considers the *Grinnell* factors outlined above, including:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.

### *1. Complexity, Expense, and Duration of the Litigation*

Securities class actions have long been recognized by federal courts as "notably difficult and notoriously uncertain." *In re Michael Milken and Assoc. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (internal citation omitted). The "well-deserved reputation" of securities actions as among the most complex and costly species of disputes heard in federal district courts is no less applicable in the instant case. *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999).

Notwithstanding the substantial discovery already exchanged, Lead Plaintiffs contemplated several forthcoming

17

depositions, including depositions of key third-party witness in foreign jurisdictions across two continents, which would undoubtedly result in significant costs, including to effectuate service, facilitate travel, and coordinate live interpreting, document translations, and court reporters.  (Sett. Mot. at 15.) The parties also faced the prospect of further motion practice, including summary judgment motions, motions challenging class certification, pre-trial and post-trial motions, and of course, the trial itself, all of which could take years.  (Sett. Mot. at 16.)  Lead Plaintiffs further acknowledge that they would be required to prove liability, loss causation, and damages in order to recover for any alleged injuries.  (Sett. Mot. at 16.) And, even if Lead Plaintiffs prevailed, collecting any judgment could be complicated by expensive enforcement and collection efforts in foreign jurisdictions.  Accordingly, the complexity, anticipated expense, and likely duration of further litigation weigh in favor of approval of the proposed settlement.

### 2. Reaction to the Proposed Settlement

Following the Court's preliminary approval of the proposed settlement, Lead Plaintiffs disseminated a notice and claim form to approximately 87,327 potential settlement class members and/or nominees.  (Reply at 2.)  Claimants were permitted more than five (5) months from the notice date on April 10, 2023 to September 28, 2023 to request exclusion from the settlement

18

class or to object to the proposed settlement.  As of this date,
"not a single Settlement Class Member requested exclusion from
the Settlement Class, or objected to the Settlement, the Plan of
Allocation, the request for attorneys' fees and reimbursement of
expenses, or Lead Plaintiffs' requests to be reimbursed for
their work litigating" the instant case.  (Reply at 4.)
Accordingly, the reaction of the settlement class to the
proposed settlement strongly suggests that approval of the
proposed settlement is warranted.

### 3. *Stage of Proceedings*

As noted previously, the parties have engaged in extensive
discovery and motion practice, but the discovery phase was far
from over at the time that the parties' reached a settlement in
principle.  In assessing the stage of the proceedings and
discovery completed, "the question is whether the parties had
adequate information about their claims." *In re Global Crossing
Sec. and ERISA Litig.,* 225 F.R.D. 436, 458 (S.D.N.Y. 2004).  By
the time the parties reached a settlement, fact discovery was
substantially underway.  As previously explained, the parties
exchanged document requests, interrogatories, and third-party
subpoenas, as well as FOIA requests directed at United States
government agencies.  Lead Plaintiffs also conducted a thorough
factual investigation prior to filing the Amended Complaint,
which entailed "reviewing and analyzing (i) Tenaris's publicly-

filed documents with the U.S. Securities and Exchange Commission ("SEC"), (ii) public [] research reports prepared by securities and financial analysts, [as well as] news and wire articles . . . (iii) investor call transcripts, [and, finally,] (iv) filings from the Argentine criminal court related to the criminal investigation" and court proceedings.  (Wolke Decl. ¶ 12.)  Lead Plaintiffs and their counsel also "retain[ed] and work[ed] with an Argentinian lawyer who assisted in obtaining information from the pending criminal cases and advising on various issues of Argentine law," coordinated the translation of relevant documents from Spanish to English, and "work[ed] with a bilingual private investigator who conducted an investigation in Argentina that involved, *inter alia*, numerous interviews of former Tenaris employees." (*Id.*)  In preparing the operative pleading, Lead Plaintiffs and their counsel also "consult[ed] with loss causation and damages experts.  (*Id.*) Lead Plaintiffs and their counsel represented that the parties were near the end of document discovery and that, having "reviewed and analyzed approximately 116,046 pages of documents produced by Defendants," the parties were preparing for depositions at the time that the proposed settlement was successfully negotiated.  (Wolke Decl. ¶¶ 26 – 27.)  Ultimately, this case has been pending before the Court for over five years.  During this time, Lead Plaintiffs' thorough investigation and witness

interviews, the parties' settlement negotiations, and the
interrogatories and document discovery obtained by Lead
Plaintiffs provide the Court with sufficient assurance that Lead
Plaintiffs are likely to have obtained "adequate information
about their claims." *Global Crossing*, 225 F.R.D. at 458.
Accordingly, the *Grinnell* factor relating to the stage of
proceedings weighs in favor of approval.

### 4. *Risks of Establishing Liability*

The risk of establishing liability also favors approval of
the proposed settlement.  The Court has already narrowed Lead
Plaintiffs' claims pursuant to the Memorandum and Order
regarding Defendants' motions to dismiss, including by
dismissing several of the original Defendants.  *See In re AOL
Time Warner, Inc.*, No. 02-cv-5575 (SWK), 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing
liability is a common risk of securities litigation. . . ." and
is heightened where the Court has already "[dismissed] claims
against several [] defendants").  Furthermore, the underlying
misrepresentation that forms the basis of Lead Plaintiffs'
claims has been litigated in an Argentine criminal court and
there was no finding of criminal wrongdoing.  (Sett. Mot. at
17.)  Although "[t]he decision by the Argentine Federal Criminal
and Correctional Court to 'revoke' the bribery charges . . .
[did] not impact the sufficiency of Plaintiff's pleading" at the

21

motion to dismiss stage (M&O at 10 n.3), the reasoning underlying the Argentine criminal court's ruling and the ruling itself "may be relevant at the evidentiary stage of this proceeding." *In re Banco Bradesco S.A. Securities Litigation*, 277 F. Supp. 3d 600, 636 (S.D.N.Y. 2017).   Moreover, Defendants are expected to contest scienter, which "typically [poses] a difficult challenge in a securities fraud action." *Guevoura Fund Ltd. v. Sillerman*, Nos. 15-cv-7192, 18-cv-9784 (CM), 2019 WL 6889901, at *8 (S.D.N.Y. Dec. 18, 2019).

Accordingly, the Court finds that the *Grinnell* factor relating to the risks of establishing liability weighs in favor of approval.

### 5. Risks of Establishing Damages

The difficulty of establishing damages and the associated costs are also formidable in the instant action.   As noted by Lead Plaintiffs, proving causation and damages would have required expert discovery, which could substantially increase costs to the settlement class and result in a costly "battle of the experts" at trial.   *See In re Time Warner Communications Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.3d 35 (2d Cir. 1986) ("it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable . . . factors").

Importantly, Lead Plaintiffs face significant collection and enforcement obstacles even if liability and damages were proven at trial, including because "Tenaris has few domestic assets" and Lead Plaintiffs would likely be required to initiate litigation in one or more foreign jurisdictions in order to enforce any U.S. judgment.  (Sett. Mot. at 19.)

### 6. Risks of Maintaining the Class Action

The Court conditionally certified a class in the instant case for settlement purposes only.  "The threat of decertification makes settlement all the more attractive to plaintiffs" and weighs in favor of approval.  *In re Time Warner*, 618 F. Supp. at 746.  The risks associated with class certification are especially high here, where Lead Plaintiffs have not obtained class certification and "anticipate[] that Defendants would oppose class certification as vigorously as it had contested Plaintiffs' allegations and discovery requests."  AOL, 2006 WL 903236 at *12.

### 7. Defendants' Ability to Withstand Greater Judgment

Although Lead Plaintiffs represent that Tenaris may be able to withstand a greater judgment generally, "the ability of defendants to pay more, on its own, does not render a settlement unfair." *McBean v. City of New York*, 233 F.R.D. 377, 388 (S.D.N.Y. 2006).  Importantly, Tenaris has very few assets within the United States, which would significantly complicate

enforcement efforts and could result in continued litigation in foreign courts arising out of enforcement efforts even if Tenaris's international operations are able to withstand judgment. *See also AOL*, 2006 WL 903236, at *12 (noting that "the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair.").

### 8. *Reasonableness of the Proposed Settlement in Light of Plaintiffs' Best Possible Recovery and the Risks of Litigation*

Finally, Lead Plaintiffs' estimated recovery in the "best-case scenario" amounts to either $189.6 million or $236.4 million, depending on the applicable loss causation theory. (Sett. Mot. at 21.)  The proposed settlement amount, $9.5 million, represents 4.02-5.01% of the total estimated "best-case" recovery.  (Sett. Mot. at 21.)  This recovery rate is significantly higher than the 2.4-2.9% average settlement recovery rate for similar securities class actions between December 2011 and December 2022.  (Sett. Mot. at 1, 21.)  *See Newman v. Stein*, 464 F.3d 689, 693 (2d Cir. 1972) (explaining that "the range of reasonableness with respect to a settlement . . . recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."); *see also AOL*, 2006 WL 903236, at *12 ("Though courts are encouraged to consider the best possible recovery, the range of reasonableness

inquiry is tightly bound to the risks of litigation" and is "tempered by the Court's [] finding that continued litigation would proceed with a high degree of risk.")

Here, the normal risks attendant to securities class action litigation are further compounded by the legal hurdles and evidentiary burdens that the settlement class would have to overcome in order to recover damages at trial, and the challenges posed by enforcement efforts involving foreign jurisdictions.  Moreover, the proposed settlement provides the class with a degree of certainty and immediacy that protracted litigation and further enforcement proceedings could significantly compromise.  *See Guevoura*, 2019 WL 6889901, at *10 ("[T]he Court should also consider that the Settlement provides for payment to the Class now, rather than a speculative payment potentially many years down the road.")

Accordingly, the Court finds that the proposed settlement is reasonable both in light of the best possible recovery available to the settlement class and in light of the risks of continued litigation.

### 9. Proposed Method of Distribution

Pursuant to Fed. R. Civ. P. 23(e)(2)(C)(ii), the Court also considers "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Following the October 20, 2023

fairness hearing, the Court issued an order explaining that it
"[wa]s very likely to find that the proposed settlement is fair,
reasonable, and adequate."  (Oct. 20, 2023 Min. Entry.)
However, at the time of the fairness hearing, Lead Plaintiffs
had not substantially completed its processing of claims from
members of the settlement class and the Court issued an order
delaying final approval of the settlement until claims
processing was complete.  *See* (Oct. 20, 2023 Min. Entry.) ("[I]n
light of the Court's desire to ensure that members of the class
will receive due consideration and adequate compensation and in
light of the Court's outstanding questions regarding claims
processing" pursuant to the proposed method of distribution
outlined in the Allocation Plan, the Court instructs Lead
Plaintiffs "to submit an update letter via ECF on or before
March 29, 2024 advising the Court of the status of claims
processing.")

Although no settlement class members had objected to the
proposed method of distributing relief to the class as of
October 20, 2023, in an abundance of caution, the Court delayed
ruling on the proposed settlement until Lead Plaintiffs could
provide further information on how the distribution method would
operate in practice.  On March 29, 2024, Lead Plaintiffs
submitted a supplemental memorandum updating the Court as to the
status of claims processing, which shed further light on "the

26

proposed method of distributing relief to the class" and ensured
that the proposed settlement satisfies the requirements of Fed.
R. Civ. P. 23(e)(2)(C)(ii).  Lead Plaintiffs confirmed that they
had fully complied with the Court-approved notice program and
that each of the 54,557 claims received during the notice period
had been processed.  Lead Plaintiffs confirmed that of the
54,557 received claims, 24,344 claims are considered valid and
eligible for payment, with an average gross award of $242.35 per
eligible claimant.[6]  (ECF No. 122 at 7-8.)

"In considering the effectiveness of the proposed method of
distributing the settlement to class members, the Court must
consider whether the proposed method will deter or defeat
unjustified claims without imposing an undue demand on class
members."  *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-cv-
456 (RPK)(LB), 2021 WL 7906584, at *7 (E.D.N.Y. May 25, 2021).
The distribution method and claims-processing formula "need only
have a reasonable rational basis, particularly if recommended by
experienced and competent class counsel."  *Id.* (also
acknowledging that, particularly in large securities class
actions, the allocation plan "can never be tailored to the
rights of each plaintiff with mathematical precision" and,

---

[6] Lead Plaintiffs stated that 30,213 claims were recommended for rejection
because the claims either failed to comprise a recognized claim under the
proposed plan of allocation, did not involve the purchase of Tenaris shares
during the relevant time period, were duplicate claims, or were withdrawn
claims.  (ECF No. 122 at 7.)

therefore, "need not be perfect.") (internal citation and quotation marks omitted).  In light of the Court's discussion regarding the Plan of Allocation at the October 19, 2023 fairness hearing and Lead Plaintiffs' subsequent update to the Court advising that 54,557 claims were received and are fully processed, the Court is satisfied that the proposed method of distributing relief, "including the method of processing class-member claims" is effective and reasonable.  Fed. R. Civ. P. 23(e)(2)(C)(ii).

## II.  Attorneys' Fees, Costs, and PSLRA Recovery

Finally, Lead Counsel moves the Court for an award of attorneys' fees in the amount of one third or 33 1/3 % of the $9,500,000 settlement fund, plus interest.  (Fees Mot. at 13.) Lead Counsel also requests reimbursement of $98,935.26 in Litigation Expenses, which consists of $83,935.26 in out-of-pocket costs as well as $15,000 in total PSLRA recoveries for Lead Plaintiffs ($7,500 for each Lead Plaintiff).  Lead Plaintiffs note that the requested attorneys' fee award represents a relatively low multiplier of 1.36 under the lodestar method and a standard one-third of the settlement fund under the percentage of recovery method, both of which are well within the range of reasonable under each respective method of calculation.  The Court agrees that the requested attorneys' fees, reimbursement for costs, and PSLRA recovery for Lead

Plaintiffs are reasonable.

**A. Percentage of the Recovery**

"Courts have long recognized that attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses . . . as compensation for their work." *In re Flag Telecom*, 2010 WL 4537550, at *23. Moreover, the PSLRA expressly permits the Court to award Lead Counsel and Lead Plaintiffs with "reasonable costs and expenses [] directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4). As noted previously, the trend within the Second Circuit has been towards the percentage-of-recovery method to calculate attorneys' fees awards. *See Yang v. Focus Media Holding Ltd.*, No. 11-cv-9051 (CM), 2014 WL 4401280, at *15 (S.D.N.Y. Sep. 4, 2014) ("Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions) (citing *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008)). District courts within the Second Circuit routinely approve attorneys' fees awards of one third or 33 1/3% as reasonable. *See City of Providence v. Aeropostale, Inc.*, No. 11-cv-7132 (CM), 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014) (awarding "33% of the Settlement Fund (or $4,950,000)" in attorneys' fees); *In re Hi-Crush Partners L.P. Securities Litigation*, No. 12-cv-8557 (CM), 2014 WL 7323417, at *12

(S.D.N.Y. Dec. 19, 2014) (awarding "33 1/3% of the Settlement Amount" in attorneys' fees and noting that "[i]n this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund.")(citing *In re Beacon Associates Litigation*, No. 09-cv-777 (CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013); *Guevoura*, 2019 WL 6889901, at *15 (approving Lead Plaintiffs request for "a fee award of 33 1/3% of the total settlement fund" and acknowledging that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit.") (internal citation omitted).

**B. Lodestar Cross-Check**

The requested award of attorneys' fees is also reasonable under the lodestar method, which the Court references as a "cross-check" against the percentage of the recovery to ensure that Lead Counsel does not extract an unwarranted windfall.[7] Although the Second Circuit has made clear that detailed lodestar analyses in securities class actions are unnecessary, the Court notes that Lead Counsel's billing rates, which "range from $675 to $1,100 for partners, and $395 to $725 for non-

---

[7] As noted previously, this Court "[recognizes] the advantages of the percentage of recovery methodology" and the wisdom of the Second Circuit that "as long as utilizing the percentage of recovery methodology does not produce an unwarranted windfall to counsel, there is no need to compel district courts to undertake the cumbersome, enervating, and often surrealistic process of lodestar computation." *Yang*, 2014 WL 4401280, at *15 (citing *Goldberger*, 209 F.3d at 49-50) (internal quotation marks omitted).

partners" are comparable to peer law firms in recent years.
(ECF No. 119-5, Ex. 5 to Motion for Settlement Approval,
Comparable Law Firm Billing Rates in Securities Class Actions
from 2017 to the Present).  Lead Counsel also reported that Lead
Plaintiffs' team of attorneys, paralegals, and professional
support staff devoted 3,522.60 hours to prosecuting the instant
case and provided a table outlining each timekeeper's hours and
the relevant billing rates in the Wolke Declaration.  (Wolke
Decl. ¶¶ 73-78.)

"Courts have continually recognized that, in instances
where a lodestar analysis is employed . . . as a 'cross check'
for a percentage of recovery analysis, counsel may be entitled
to a 'multiplier' of their lodestar rate to compensate them for
the risk they assumed, the quality of their work and the result
achieved for the class."  *In re Telik*, 576 F. Supp. 2d at 590
(collecting cases).  As discussed previously, the risks inherent
in proving liability and damages in a complicated securities
class action such as this one, the risks attendant to continued
discovery and motion practice, as well as the risks associated
with any enforcement efforts in the event of a successful
damages award, are substantial.

Moreover, as courts have recognized, the lodestar
multiplier also accounts for the risks incurred by Lead
Plaintiffs and Lead Counsel in taking on a large, complex

31

securities class action on a contingency basis and compensates
Lead Counsel in accordance with the quality of their
representation in the instant case.  *See In re Flag Telecom*,
2010 WL 4537550, at *26 (recognizing the "premium on [a]
lodestar [as a means] to compensate [Lead Plaintiffs] for the
contingent risk factor."); *Aeropostale*, 2014 WL 1883494, at *14
(noting that an attorneys' fee award of 33% of the settlement
fund was appropriate, in part, because "Lead Counsel undertook
[the] Action on a wholly contingent-fee basis, investing a
substantial amount of time and money to prosecute the Action
without a guarantee of compensation.")  Accordingly, a 1.36
multiplier to compensate Lead Plaintiffs for incurring
substantial risks is appropriate, and courts in this Circuit
have routinely approved lodestar multipliers well above 1.36 as
reasonable.  *See In re Telik*, 576 F. Supp. 2d at 590 ("[L]odesar
multiples of over 4 are routinely awarded by courts . . . [such
that] a 1.6x multiplier is . . . reasonable[]."); *Maley v. Del
Global Technologies Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y.
2002) ("[A] multiplier [as high as] 4.65 [is] well within the
range awarded by courts in this Circuit and courts throughout
the country."); *Velez v. Novartis Pharmaceuticals Corp.*, No. 04-
cv-9194 (CM), 2010 WL 4877852, at *23 (S.D.N.Y. Nov. 30, 2010)
(recognizing a "multiplier of 2.4 times the hourly fees already
incurred. . . . [as] well within (indeed, at the lower end) of

the range of multipliers accepted within the Second Circuit.").

### C. *Goldberger* Factors

The Court finds that the *Goldberger* factors also support the requested fee award, including "(1) counsel's time and labor; (2) the magnitude and complexities of the litigation; (3) the risk of [continued] litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50.

As noted previously, Lead Counsel invested significant time and resources in conducting an initial investigation, engaging in extensive discovery, and advocating for the interests of the settlement class in the course of both motion practice and settlement negotiations.  The magnitude and complexity of the instant case, which are already heightened given the securities context, also weigh in favor of approval of the requested award of attorneys' fees, particularly given the international nexus and the potential impact of a previous ruling by a foreign court.  By the same token, the risks of continued litigation are substantial, including proving the elements of the instant case and enforcing any damages award that could result from Lead Plaintiffs' successful efforts.  The most critical factors in determining an appropriate award of attorneys' fees are the degree of success obtained and the quality of representation,

which "is best measured by results," including "the extent of possible recovery." *Goldberger*, 209 F.3d at 55 (internal citation omitted).  The proposed settlement amount, $9.5 million, represents 4.02-5.01% of the total estimated "best-case" recovery, which is significantly higher than the 2.4-25.9% average settlement recovery rate for similar securities class actions between 2011 and 2022.  (Fees Mot. at 30-31.)  Finally, "[c]ourts in the Second Circuit have held that 'public policy concerns favor the award of reasonable attorneys' fees in class action securities litigation" because appropriate financial incentives are necessary "to attract well qualified plaintiffs' counsel . . . to bring securities class actions that supplement the efforts of the SEC." *In re Flag Telecom*, 2010 WL 4537550, at * 29.

Importantly, no member of the settlement class has requested exclusion or objected to the requested award of attorneys' fees, costs, or PSLRA recoveries.  Courts recognize that in "a securities class action, where the class likely contains sophisticated investors . . . [plaintiffs] are [] in a position to object" such that the absence of objections should be credited as an indication of a successful settlement. *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014); *see also In re Flag Telecom*, 2010 WL 4537550, at * 29 ("[N]umerous courts have noted that the lack of objection from

34

members of the class is one of the most important factors in determining the reasonableness of a requested fee."). Ultimately, in light of the fact that the Court has concluded that the total settlement amount represents a favorable outcome for the settlement class, the Court finds that the award of attorneys' fees, taking into account the *Goldberger* factors, under either the lodestar method or the percentage of the recovery method, weighs in favor of approval.

### D. Reimbursement of Expenses

In addition to an award of attorneys' fee, courts within the Second Circuit "normally grant expense requests" for "reasonable out-of-pocket expenses" in common fund cases as a matter of course" *In re EVCI*, 2007 WL 2230177, at *18, and so long as Lead Counsel provides adequate documentation of the alleged expenses. Here, Lead Counsel incurred out-of-pocket expenses for professional services rendered by Lead Plaintiffs' experts, an Argentinean attorney and investigator, the mediator, and legal research fees, filing fees, and costs associated with Lead Counsel's document review platform.  (Fees Mot. at 33; Wolke Decl. ¶¶ 91-96.)  The Wolke Declaration summarizes Lead Counsel's reimbursable expenses in a table reflecting each category of expenses and the amount paid.  (Wolke Decl. ¶ 91); *See In re EVCI*, 2007 WL 2230177, at *18 (pointing to "[t]he Stewart Declaration" as adequate documentation of

"'reimbursable' expenses on behalf of the Class in the
prosecution of the Action.")

The Court finds that the requested reimbursement is based
on reasonably incurred expenses that "were essential to the
successful prosecution and resolution of the" instant case and
that the relevant expenses are adequately documented.  *In re
EVCI*, 2007 WL 2230177, at *18.  Accordingly, the request for
reimbursement of Lead Counsel's reasonable expenses in the
amount of $83,935.26 is approved.

**E. PSLRA Recovery**

Lead Plaintiffs are also entitled to a PSLRA recovery
pursuant to 15 U.S.C. § 78u-4(a)(4).  Under this provision, the
Court may award "reasonable costs and expenses . . . directly
relating to the representation of the class to any
representative party serving on behalf of the class," including
Lead Plaintiffs.  15 U.S.C. § 78u-4(a)(4).  Lead Plaintiffs
"reviewed the pleadings and briefs" in the instant case, "as
well as court orders," regularly communicated with Lead Counsel
about litigation strategy, strengths, and weaknesses;
participated in settlement negotiations, and after a thorough
review, ultimately "authorized the settlement."  (Fees Mot. at
13.)  In recognition of their efforts and in light of the fact
that no objection has been raised by any settlement class
member, the Court approves the requested PSLRA award of $7,5000

for each Lead Plaintiff or $15,000 in total.

**CONCLUSION**

For the reasons set forth above, Lead Plaintiffs' motion for final approval of the Class Action Settlement and the Plan of Allocation is **GRANTED** in its entirety and Lead Counsel's motion for attorneys' fees, including an award of 33 1/3% of the Settlement Fund plus interest as attorneys' fees, $83,935.26 in out-of-pocket litigation expenses, and a total PSLRA award of $15,000 in total ($7,500 for each Lead Plaintiff) is **GRANTED** in its entirety.  The Clerk of Court is respectfully requested to enter Judgment and close this case.

**SO ORDERED.**

Dated:     April 22, 2024
           Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York